**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **HOPE R. ESCALANTE,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No.  3:14-CV-0641-G-BH** |
| | § | |
| **CAROLYN W. COLVIN, ACTING** | § | |
| **COMMISSIONER OF THE SOCIAL** | § | |
| **SECURITY ADMINISTRATION,** | § | |
| | § | |
| **Defendant.** | § | |

**MEMORANDUM OPINION AND ORDER**

Pursuant to the consent of the parties and the order of transfer dated May 16, 2014, this matter has been transferred for the conduct of all further proceedings and the entry of judgment. Before the Court are *Plaintiff's Social Security Appeal Brief*, filed May 29, 2014 (doc. 18), and *Defendant's Brief*, filed June 30, 2014 (doc. 19).  Based on the relevant filings, evidence, and applicable law, the Commissioner's decision is **AFFIRMED**.

## I.  BACKGROUND[1]

### A.    Procedural History

Hope Escalante (Plaintiff) seeks judicial review of a final decision by the Acting Commissioner of Social Security (Commissioner) denying her claim for supplemental security income (SSI) under Title XVI of the Social Security Act.  (R. at 1, 13-19.)  On July 20, 2011, Plaintiff applied for SSI, alleging disability beginning on July 18, 2011. (R. at 13, 41.)  Her claim was denied initially and upon reconsideration.  (R. at 41-42.)  Plaintiff requested a hearing before

---

[1]  The background information is summarized from the record of the administrative proceeding, which is designated as "R."

an Administrative Law Judge (ALJ), and personally appeared and testified at a hearing held on August 29, 2012. (R. at 24-40, 60.) On December 26, 2012, the ALJ issued a decision finding Plaintiff not disabled. (R. at 10-19.) Plaintiff appealed, and the Appeals Council denied her request for review on December 16, 2013, making the ALJ's decision the final decision of the Commissioner. (R. at 1.) Plaintiff timely appealed the Commissioner's decision pursuant to 42 U.S.C. § 405(g). (*See* doc. 1.)

**B.    Factual History**

    **1.    Age, Education, and Work Experience**

Plaintiff was born on March 4, 1960, and was 52 years old at the time of the hearing before the ALJ. (R. at 27, 41.) She obtained a GED and had past relevant work as a nursery school teacher and home attendant. (R. at 27, 37.)

    **2.    Medical, Psychological, and Psychiatric Evidence**

Plaintiff presented herself to Metrocare Services (Metrocare) on July 18, 2011. (R. at 248, 257.) She complained that she could not stop crying due to the loss of her mother and grandmother. (*Id.*) Plaintiff reported that it took hours for her to fall asleep, she felt sad, and she had decreased appetite. (R. at 248.) Plaintiff displayed racing thoughts, depressed mood, tearful affect, and impaired attention. (R. at 249.) She was tearful, but alert, and her insight, judgment, and impulse control were fair. (*Id.*)

On August 18, 2011, Plaintiff met with Tamara Thorn, a Physician Assistant at Metrocare, for a routine follow-up appointment. (R. at 252-254.) Plaintiff was cooperative, there was no sign of psychotic features, and her thoughts were organized. (R. at 252.) Her insight and judgment were fair. (R. at 253.) Plaintiff reported that she was sleeping much better with trazodone. (*Id.*) She

complained of chronic back pain, and she denied any recent hospitalizations, use of drugs, or stressors. (*Id*.) Plaintiff was compliant with her medications. (*Id*.) Although she reported that the medications sedated her initially, she noted her mood had improved, she was calmer and less nervous, and she did less "rocking". (*Id*.) Ms. Thorn recommended that she continue taking trazadone and sertraline (Zoloft). (*Id*.)

On October 22, 2011, Peter Holm, M.D., a state agency medical consultant (SAMC), conducted a psychiatric examination of Plaintiff. (R. at 257-59.) Plaintiff's chief complaint was depression. (R. at 257.) She was calm, cooperative, and alert during the examination. (R. at 258.) Plaintiff's thinking was logical, coherent, and relevant with no loose associations. (*Id*.) She had not had suicidal ideations for at least two months. (*Id*.) Plaintiff's mood was depressed, but she was fully oriented. (*Id*.) Dr. Holm found that she was able to calculate 10+6, but not 11-4 or $1.50-$0.60. (*Id.*) His diagnosis was major depression, recurrent with moderate severity. (R. at 259.) He assigned her a global assessment of functioning (GAF) score of 60.[2] (*Id.*) Dr. Holm concluded that Plaintiff's prognosis was fair, but based on her calculation performance during the examination, she would not be able to manage benefits adequately for her own best interest. (*Id*.)

On November 7, 2011, H. Ann Brown-Prier, a state agency vocational consultant, completed a Sequential Vocational Guide. (R. at 188.) She determined that Plaintiff had past relevant work during the 15 years prior to the current date of adjudication as a preschool teacher. (*Id*.) She concluded that "[o]n a function-by-function basis," Plaintiff's residual functional capacity (RFC) ruled out her ability to perform all past relevant jobs as described by her and the dictionary of

---

[2] GAF is a standardized measure of psychological, social, and occupational functioning used in assessing a patient's mental health. *See Boyd v. Apfel*, 239 F.3d 698, 700 n. 2 (5th Cir. 2001). A GAF score of 51 to 60 indicates a "moderate" impairment in social, occupational, or school functioning. *American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders* (DSM–IV-TR) p. 34 (4th ed., rev.2000).

occupational titles (DOT).  (*Id.*)  Using Medical-Vocational Rule 204 as a framework, Ms. Brown-Prier determined that Plaintiff could work as an assembler, waxer, or silverware assembler, jobs that were available in significant numbers both in Texas and nationally.  (*Id.*)

On November 11, 2011, Murray Lerner, Ph.D., a SAMC, completed a Psychiatric Review Technique form (PRTF).  (R. at 261-73.)  He observed that Plaintiff's depressive syndrome was characterized by appetite disturbance with change in weight, sleep disturbance, decreased energy, and difficulty concentrating and thinking.  (R. at 264.)  Dr. Lerner opined that Plaintiff had moderate restrictions in daily living activities, moderate difficulties in maintaining social function, moderate limitations in maintaining concentration, persistence, and pace, and no episodes of decompensation of extended duration.  (R. at 271.)  He observed that although Plaintiff stated that she could not leave home alone, she attended Metrocare appointments without a chaperone.  (R. at 273.)  Dr. Lerner concluded that Plaintiff's signs and symptoms "fractionally compromise[d her] ability to function independently, appropriately and effectively on a sustained basis."  (*Id.*) (emphasis omitted).

Dr. Lerner also completed a mental RFC assessment (MRFC).  (R. at 275-77.)  Plaintiff's medical history showed that she was moderately limited in the following six mental work-related abilities: the ability to remember locations and work-like procedures; the ability to maintain attention and concentration for extended periods; the ability to work in coordination with or proximity to others without being distracted by them; the ability to interact appropriately with the general public; the ability to respond appropriately to changes in the work setting; and the ability to travel in unfamiliar places or use public transportation.  (R. at 275-76.)  She was markedly limited in two mental work-related abilities: the ability to understand and remember detailed instructions; and the ability to carry out detailed instructions.  (R. at 275.)  Plaintiff, however, was not

significantly limited in twelve mental work-related abilities including the ability to understand and remember very short and simple instructions, and the ability to carry out very short and simple instructions. (R. at 275-76.) Dr. Lerner concluded that Plaintiff was "maximally able to understand, remember, and carry out simple instructions, make simple decisions, attend and concentrate for extended periods, interact adequately with co-workers and supervisors[, and] respond appropriately to changes in [a] routine work setting." (R. at 277.)

On January 2, 2012, Margaret Meyer, M.D., a SAMC, completed a case assessment form. (R. at 279-81.) Dr. Meyer concluded that Plaintiff's medically determinable impairments were depression, lumbar radiculopathy, and herniated disc. (*Id.*) Dr. Meyer affirmed Dr. Lerner's MRFC as written. (R. at 280.) She further noted that Plaintiff's lumbar radiculopathy and herniated disc impairments merited technical denial due to "FTR". (R. at 281.)

On June 12, 2012, Kazia Luszczynska, M.D., a psychiatrist at Metrocare, completed a NorthSTAR Outpatient Authorization Tools & Treatment Plan. (R. at 386-88.) Dr. Luszczynska's principal diagnosis was bipolar disorder, severe without psychotic features, and she assigned a GAF score of 46.[3] (*Id.* at 386.) She observed that Plaintiff had no current indication of suicidal or homicidal thoughts and that she had a few natural and community supports, but she had functional impairment due to her isolation as well as moderate disturbance in sleep, eating, and/or sexual interest that did not pose a serious threat to health. (R. at 386.) Plaintiff had substantial barriers to employment, but she had minimal housing instability. (*Id.*) Dr. Luszczynska's expected course of treatment was for three months. (R. at 387.)

---

[3] A GAF score of 41 to 50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." DSM–IV–TR, at 32.

Dr. Luszczynska found that Plaintiff's functional impairment was moderate.  (R. at 389.) Plaintiff's thoughts were organized, her behavior was cooperative, her speech was normal, and there was no sign of psychotic features.  (R. at 390.)  Her mood was dysthymic, and her affect was restricted.  (*Id*.)  She was alert, oriented, and had average intelligence.  (*Id*.)  Plaintiff's insight, judgment, and impulse were fair.  (R. at 391.)  She suffered from increased arousal and fatigue.  (*Id*.)

### 3.     Hearing Testimony

On August 29, 2012, Plaintiff and a vocational expert (VE) testified at a hearing before the ALJ.  (R. at 24-40.)  Plaintiff was represented by an attorney.  (R. at 24.)

#### a.     *Plaintiff's Testimony*

Plaintiff testified that she, her husband, and her son lived with her sister's family in her sister's house.  (R. at 27.)  She last worked in July 2011, cleaning the apartments and the laundry area at Watermark Apartments.  (R. at 27-28.)  A few weeks after starting the job, she fell and broke her wrist while cleaning the laundry area.  (R. at 28.)  Before working at Watermark Apartments, she worked at Kids Connection as a pre-kindergarten bilingual teacher, and she stopped working there in 2007.  (R. at 28.)  She worked as a preschool teacher for about 18 years.  (R. at 29.)  She also worked as a personal aide for an elderly woman who could not take care of herself.  (*Id*.)  She woke the elderly woman up in the morning, fixed her breakfast, bathed her, and helped her get dressed.  (*Id*.)  Plaintiff also did simple house cleaning, cooking, and laundry for the woman.  (R. at 30.)

Plaintiff testified that she had a back condition caused by a slip and fall accident on the ice sometime in the 1980s.  (R. at 30-31.)  She had another slip and fall accident at the Watermark Apartments in July 2011.  (R. at 31.)  According to Plaintiff, her left leg went cold and throbbed and

gave out on her.  (R. at 32.)  She fell several times due to her left leg, and she carried a cane with her so she would not fall.  (*Id*.)  Plaintiff testified that she could walk a block with her cane, but it would take awhile.  (*Id*.)  She could not stand up unassisted.  (*Id*.)  She also could not sit straight due to pain.  (R. at 32-33.)  Plaintiff had been diagnosed with depression, and she could not read any more because the depression affected her memory and her concentration.  (R. at 34.)  Plaintiff also lost 15-20 pounds of weight in the past year.  (R. at 34.)  She testified that the medicine she took made her sleepy and caused her to lose her appetite.  (R. at 34-35.)  She had trouble sleeping because her back throbbed, and she experienced a shooting pain up her spine to her head.  (R. at 35.)

Plaintiff used to love being around her nieces and nephews, but she currently could not handle the noise they  made.  (*Id*.)  Plaintiff's sister took her to church every Sunday and Wednesday. (R. at 36.)  She did not go grocery shopping because she could not remember what she was supposed to get.  (R. at 36.)  She did not do any household chores because of her back and her left foot.  (R. at 36.)  Plaintiff did not cook because she would burn food.  (R. at 36.)  If she needed assistance when taking a bath, her husband and sister assisted her.  (R. at 36-37.)  She spent most of the day sleeping because of her medications for depression and her sleeping pills for her pain. (R. at 37.)

### b.      VE's Testimony

The VE classified Plaintiff's past relevant work as a nursery school teacher and home attendant.  (R. at 37.)  The ALJ asked the VE whether a person would be able to perform the past work he had described if a person had the following limitations: never climb ropes, ladders, or scaffolding; never work at unprotected heights or dangerous machinery; mentally limited to understand, remember, and carry out only simple instructions; only simple routine and repetitive one

to three step tasks without frequent changes to the duties; and only occasional contact with the public. (R. at 37-38.) The VE testified that such a person could not perform Plaintiff's past relevant work. (R. at 38.) The ALJ asked the VE whether there were other jobs that could be performed if the hypothetical person was 52 years old with a GED and had the past work the VE described with the same limits. (R. at 38.) The VE answered in the affirmative and listed the following examples of unskilled jobs: (1) cleaner/housekeeping, with 225,000 jobs nationally and 16,000 jobs in Texas; (2) office helper, with 15,000 jobs nationally and 1,500 jobs in Texas; and (3) mail clerk, with 15,000 jobs nationally and 1,400 jobs in Texas. (*Id*.) In response to a question by the ALJ, the VE testified that his testimony was consistent with the DOT. (*Id*.)

Plaintiff's attorney modified the hypothetical and asked the VE whether there were any jobs available for someone with the same age, education, and limitations, who could not stand without the help of a cane, and could not sit longer than an hour at a time. (*Id*.) The VE answered in the affirmative and testified that a charge account clerk would be an example of such job. (R. at 38-39.) Plaintiff's attorney then added the limitation that the person required numerous breaks to rest or lie down. (R. at 39.) The VE testified that if the breaks were outside of the regular routine breaks and lunch period, then no jobs would be available for that hypothetical person. (R. at 39.) Finally, Plaintiff's attorney added the limitation that the person could not make it to work a couple of times a month. (*Id*.) The VE testified that there would not be any jobs available. (*Id*.)

## C.   <u>ALJ's Findings</u>

The ALJ issued his decision denying benefits on December 26, 2012. (R. at 10.) At step one, he found that Plaintiff had not engaged in substantial gainful activity since her application date of July 20, 2011. (R. at 15.) At step two, he found that Plaintiff had three severe impairments:

major depressive disorder, anxiety, and insomnia.  (*Id.*)  Despite those impairments, at step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any impairment listed in the regulations.  (*Id.*)

Before proceeding to step four, the ALJ determined that Plaintiff had the RFC to perform a full range of work at all exertional levels with the following nonexertional limitations: no work at unprotected heights or around dangerous moving machinery; occasional contact with the public; routine and repetitive simple one to three step procedures without frequent changes in duties; and ability to understand, remember, and carry out simple instructions.  (R. at 16.)  At step four, the ALJ determined that Plaintiff could not perform her past relevant work.  (R. at 18.)  At step five, also based on the VE's testimony, the ALJ determined that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as cleaner/housekeeper, office helper, and mail clerk.  (R. at 18-19.)  Accordingly, the ALJ concluded that Plaintiff was not disabled as the term is defined under the Social Security Act, at any time since her application date.  (R. at 19.)

## II. ANALYSIS

### A.    <u>Legal Standards</u>

#### 1.    **Standard of Review**

Judicial review of the commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence.  *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. §§ 405(g), 1383(c)(3).  Substantial evidence is defined as more than a scintilla, less than a preponderance, and as being such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett v. Chater*, 67 F.3d 558,

564 (5th Cir. 1995). In applying the substantial evidence standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence supports the Commissioner's decision. *Greenspan*, 38 F.3d at 236. A finding of no substantial evidence is appropriate only if there is a conspicuous absence of credible evidentiary choices or contrary medical findings to support the Commissioner's decision. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

The scope of judicial review of a decision under the supplemental security income program is identical to that of a decision under the social security disability program. *Davis v. Heckler*, 759 F.2d 432, 435 (5th Cir. 1985). Moreover, the relevant law and regulations governing the determination of disability under a claim for disability insurance benefits are identical to those governing the determination under a claim for supplemental security income. *See Id.* The Court may rely on decisions in both areas, without distinction, when reviewing an ALJ's decision. *Id.*

### 2. Disability Determination

To be entitled to social security benefits, a claimant must prove he or she is disabled as defined by the Social Security Act. *Leggett*, 67 F.3d at 563-64; *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988). The definition of disability under the Social Security Act is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mentla impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 189, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled:

1.      An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2.      An individual who does not have a "severe impairment" will not be found to be disabled.

3.      An individual who "meets or equals a listed impairment in Appendix 1" will not be found to be disabled.

4.      If an individual is capable of performing the work he had done in the past, a finding of "not disabled" must be made.

5.      If an individual's impairment precludes him from performing his work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (per curiam) (summarizing 20 C.F.R. § 404.1520(b)-(f)) (currently 20 C.F.R. § 404.1520(a)(4)(i)-(v) (2012)).  Under the first four steps of the analysis, the burden lies with the claimant to prove disability. *Leggett*, 67 F.3d at 564.  The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id*.  Once the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan*, 38 F.3d at 236.  This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations, by vocational expert testimony, or other similar evidence. *Froga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).  A finding that a claimant is not disabled at any point in the five-step review is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

**B.**      <u>**Issues for Review**</u>

Plaintiff presents three issues for review:

11

(1) The Administrative Law Judge (ALJ) erred by failing to assign weight to any of the medical opinions contained in the record.  This error is compounded by his failure to include the additional limitations contained in those opinions in his mental residual functional capacity (RFC) finding.

(2) Relatedly, in addition to Agency policy requiring explicit weighing of medical opinions, an ALJ owes a "duty of explanation" to a disability claimant (and, by extension, to a reviewing court).  Here, the ALJ's paltry ten paragraph (many of which consisted of only one sentence) "analysis" does not meet any reasonable standard of a "reasoned decision," and is inconsistent with Agency policy requiring same.

(3) Again, relatedly, the ALJ's credibility assessment is flawed, as he relied on boilerplate language and failed to provide specific reasons for not crediting [Plaintiff's] testimony.

## C.   <u>Medical Opinions</u>

Plaintiff argues that the ALJ erred by failing to assign weight to any medical opinions when determining her RFC.  (Doc. 18 at 3-7.)

Residual functional capacity, or RFC, is defined as the most that a person can still do despite recognized limitations.  20 C.F.R. § 404.1545(a)(1) (2003).  It "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis."  Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at *1 (S.S.A. July 2, 1996).  An individual's RFC should be based on all of the relevant evidence in the case record, including opinions submitted by treating physicians or other acceptable medical sources.  20 C.F.R. § 404.1545(a)(3) (2012); SSR 96-8p, 1996 WL 374184, at *1.

The ALJ "is responsible for assessing the medical evidence and determining the claimant's residual functional capacity."  *Perez v. Heckler*, 777 F.2d 298, 302 (5th Cir.1985).  The ALJ may find that a claimant has no limitation or restriction as to a functional capacity when there is no allegation of a physical or mental limitation or restriction regarding that capacity, and no information in the record indicates that such a limitation or restriction exists.  *See* SSR 96–8p, 1996

WL 374184, at *1.  The ALJ's RFC decision can be supported by substantial evidence even if he does not specifically discuss all the evidence that supports his decision or all the evidence that he rejected.  *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir.1994).  A reviewing court must defer to the ALJ's decision when substantial evidence supports it, even if the court would reach a different conclusion based on the evidence in the record.  *Leggett*, 67 F.3d at 564.  Nevertheless, the substantial evidence review is not an uncritical "rubber stamp" and requires "more than a search for evidence supporting the [Commissioner's] findings."  *Martin v. Heckler*, 748 F.2d 1027, 1031 (5th Cir.1984) (citations omitted).  The Court "must scrutinize the record and take into account whatever fairly detracts from the substantiality of the evidence supporting the" ALJ's decision.  *Id.*  Courts may not reweigh the evidence or substitute their judgment for that of the Commissioner, however, and a "no substantial evidence" finding is appropriate only if there is a "conspicuous absence of credible choices" or "no contrary medical evidence[.]"  *See Johnson*, 864 F.2d at 343 (citations omitted).

Although Plaintiff does not specifically identify the medical opinions to which she contends the ALJ failed to assign weight as provided by 20 C.F.R. § 404.1527(c), she cites to the following medical records: (1) October 22, 2011 psychiatric examination by Dr. Holm, an SAMC (R. at 257-59); (2) the PRTF and MRFC completed by Dr. Lerner, an SAMC, on November 11, 2011 (R. at 261-77); and (3) June 12, 2012 Metrocare treatment plan and pharmacological report completed by Dr. Luszczynska, a psychiatrist (R. at 386-92).  (Doc. 18 at 3-7.)[4]

---

[4]  Plaintiff also cites to the records of an August 18, 2011 visit to Metrocare, during which she met with a physician's assistant for a follow-up appointment.  (R. at 252-54).  Medical opinions are "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairments, including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s) and [the claimant's] physical or mental restrictions."  20 C.F.R. § 404.1527(a)(2).  "[O]ther acceptable medical sources" include licensed physicians or osteopathic doctors, licensed or certified psychologists,

### 1.   *Dr. Luszczynska*

The Commissioner is entrusted to make determinations regarding disability, including weighing inconsistent evidence. 20 C.F.R. §§ 404.1520b(b) and 404.1527(c) (2012). Every medical opinion is evaluated regardless of its source.  20 C.F.R. § 404.1527(c)(1) (2012).  Generally, an opinion from an examining source is given more weight than the opinion from a non-examining source. *Id.*  However, the "standard of deference to the examining physician is contingent upon the physician's ordinarily greater familiarity with the claimant's injuries.  [W]here the examining physician is not the claimant's treating physician and where the physician examined the claimant only once, the level of deference afforded his opinion may fall correspondingly." *Rodriguez v. Shalala*, 35 F.3d 560 (5th Cir. 1994) (unpublished) (citing *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990)).  The ALJ is also free to reject the medical opinion of any physician when the evidence supports a contrary conclusion. *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1981).  Moreover, "[w]hen a treating or examining physician's opinions are inconsistent with other substantial evidence in the record, the opinions are not entitled to any specific weight in the ALJ's decision." *Smith v. Comm'r of Soc. Security Admin*, No. 4:12-CV-00625-DDB, 2014 WL 4467880 at *3 (E.D. Tex. Sept. 9, 2014); *Morvant v. Comm'r of Soc. Security Admin.*, No. 12-CV-2716, 2014 WL 868912, at *9 (W.D. La. Feb. 28, 2014) (same).

Dr. Luszczynsak saw Plaintiff at Metrocare once to assign her a treatment plan.  (*See* R. at 386-93.)  She diagnosed Plaintiff with bipolar disorder, most recent episode depressed, severe

---

licensed optometrists, licensed podiatrists, and qualified speech-language pathologists.  20 C.F.R. §§ 404.1513(a), 416.913(a). Because a physician's assistant is not an "other acceptable medical source", the August 18, 2011 Metrocare record is not a qualifying medical opinion. *See* 20 C.F.R. §§ 404.1513(d), 416.913(d) (providing a non-exhaustive list of non-medical sources, which includes "physician's assistants"); *Andrade v. Astrue*, No. 4:11-CV-318-Y, 2012 WL 1106864, at *12 (N.D. Tex. Feb. 13, 2012) (finding that a physician's assistant is not a other acceptable medical source); *Latham v. Astrue*, No. 7:07-CV-086-BD, 2008 WL 4635396, at *3 (N.D. Tex. Oct. 15, 2008) (same).

without psychotic features and she assigned Plaintiff a GAF score of 46.  (R. at 386.)  She found that Plaintiff's functional impairment was moderate.  (R. at 389.)  Plaintiff's thoughts were organized, her behavior was cooperative, her speech was normal, and there was no sign of psychotic features.  (R. at 390.)  Her mood was dysthymic and her affect was restricted.  (R. at 390.)  She was alert, oriented, and had average intelligence.  (R. at 390.)  Plaintiff's insight, judgment, and impulse were fair.  (R. at 391.)  She suffered from increased arousal and fatigue.  (R. at 391.)  The ALJ, in his decision, noted Dr. Luszczynska's bipolar disorder diagnosis and the GAF score of 46.  (R. at 17.)  He made no further reference to Dr. Luszczynska's opinion and did not incorporate the bipolar disorder diagnosis in his decision.  (*See* R. at 15-19.)

By not incorporating the bipolar disorder diagnosis in his decision, the ALJ implicitly rejected Dr. Luszczynska's opinion.  When Plaintiff's medical records are reviewed as a whole, however, no other medical records support this diagnosis.  They show that Dr. Holm, an examining SAMC, diagnosed Plaintiff with major depression, recurrent with moderate severity.  (R. at 259.)  A non-examining SAMC found that Plaintiff had depression.  (R. at 279.)  Plaintiff also testified that she had been diagnosed with depression.  (R. at 34.)  Dr. Luszczynska had no greater familiarity with Plaintiff than Dr. Holm because they both examined Plaintiff once, so the ALJ's decision to weigh Dr. Holm's opinion more heavily does not amount to a reversible error.  *See Rodriguez*, 35 F.3d at *2.  Further, because Dr. Luszczynska's diagnosis conflicted with the other medical evidence, her opinion was not entitled to any specific weight in the ALJ's decision.  *Smith*, 2014 WL 4467880 at*3; *Morvant*, 2014 WL 868912, at *9.

To the extent that Plaintiff complains of the failure to specifically assign weight to Dr. Luszczynska's opinion, the ALJ did not err and remand is not required.

### 2.      *SAMCs Holm and Lerner*

SAMCs such as Drs. Holm and Lerner are considered experts in the Social Security disability program, and their opinions may be entitled to great weight if they are supported by the evidence. *Rawls v. Astrue*, No. 4:10–CV–71–BJ, 2011 WL 725279, at \*11 (N.D. Tex. Mar.2, 2011). Although an ALJ is solely responsible for assessing a claimant's RFC, he must consider and evaluate any opinion by an SAMC regarding the claimant's RFC. *See* Social Security Ruling (SSR) 96–6p, 1996 WL 374180, at \*4 (S.S.A. July 2, 1996). Specifically, "RFC assessments by [SAMCs] . . . are to be considered and addressed in the [ALJ's] decision as medical opinions from nonexamining sources about what the individual can still do despite his or her impairment[s]" and "are to be evaluated considering all the factors . . . for considering opinion evidence" outlined in 20 C.F.R. § 404.1527(c).[5] *Id.* The ALJ is not required to expressly discuss each finding by an SAMC or discuss each factor listed in 20 C.F.R. § 404.1527(c), however, because such a detailed analysis applies only to the ALJ's rejection of a treating source's uncontradicted opinion. *See Newton v. Apfel*, 209 F.3d 448, 456-58 (5th Cir.2000). The ALJ is required to "explain the weight given to [the SAMCs'] opinions in [his] decision[]." SSR 96–6p, 1996 WL 374180, at \*4; 20 C.F.R. § 404.1527(f)(2)(ii).

Here, the ALJ stated that he "considered opinion evidence in accordance with the requirements of 20 CFR 416.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p." (R. at 16.) His decision referred to Drs. Holm and Lerner's opinions when determining Plaintiff's RFC. (R. at 17-18.) It specifically discussed Plaintiff's visit to Dr. Holm, during which she complained of low back

---

[5]   Section 404.1527( c) states: "regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (c)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion." These factors are: (1) whether the source examined the claimant or not; (2) whether the source treated the claimant; (3) the medical signs and laboratory findings that support the given opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the opinion is made by a specialist or non-specialist; and (6) any other factor which "tend[s] to support or contradict the opinion."

pain and depression, and his findings in a mental status examination that she was adequately dressed and groomed, she was calm and alert, but her mood was depressed and her affect was mild to moderately blunted. (R. at 17.) The decision noted Dr. Holm's diagnosis of "major depression recurrent with moderate severity" and assignment of a GAF score of 60. (*Id.*) The ALJ's decision also noted that Dr. Lerner's PRTF found that Plaintiff "had no marked or extreme limitations." (*Id.*) It adopted his conclusion in the MRFC that Plaintiff had the mental RFC to understand, remember, and carry out simple instructions, make simple decisions, attend and concentrate for extended periods, interact adequately with co-workers and supervisors and respond to changes in a routine work setting. (*Compare* R. at 17 *with* 277.) The ALJ, however, failed to assign specific weight to the SAMCs' opinions.

Even though the ALJ referred to the appropriate ruling that requires him to give specific weight to SAMC opinions, and he discussed the relevant SAMC opinions in his decision, he did not implement the ruling when he failed to address the weight he assigned the SAMC opinions. This was an error. *See Gardner v. Astrue*, at *8 (S.D. Tex. Mar. 26, 2009) (finding that the ALJ erred when he referred to correct regulations and rulings, but did not actually discuss the weight he assigned the SAMC opinions).

### 3.      *Harmless error*

The Fifth Circuit has held that "[p]rocedural perfection in administrative proceedings is not required. This court will not vacate a judgment unless the substantial rights of a party have been affected. . . . The major policy underlying the harmless error rule is to preserve judgments and to avoid waste of time." *Anderson v. Sullivan*, 887 F.2d 630, 634 (5th Cir. 1989) (quoting *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988)) (per curiam). "[P]rocedural improprieties . . . will

therefore constitute a basis for remand *only if* such improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision." *Alexander v. Astrue*, 412 F. App'x 719, 722 (5th Cir. 2011) (emphasis added); *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988).  The ALJ's error is harmless if the substantial rights of a party have not been affected.  *See Alexander*, 412 F. App's at 722; *see also Webb v. Astrue*, No. 4:08-CV-747-Y, 2010 WL 1644898, at *11 (N.D. Tex. Mar. 2, 2010), *rec. adopted*, 2010 WL 1644697 (applying harmless error analysis to the ALJ's failure to give weight to an SAMC's opinion and finding there was substantial evidence to support the ALJ's RFC determination).

Here, during the relevant time period, four psychologists and/or psychiatrists rendered medical opinions.  (R. at 257-59, 261-73, 275-77, 279-81, 386-90.)  Two of the examining psychiatrists and two SAMCs concluded that Plaintiff had moderate impairments.  (R. at 258-59, 271, 389-90.)  Both examining psychiatrists observed that Plaintiff was cooperative, alert, and her judgment was fair.  (R. at 258-59, 389-90.)  The ALJ specifically discussed all of these medical opinions in his decision.  (R. at 16-17.)  After considering the entire record, the ALJ determined that Plaintiff had the RFC to perform a full range of work at all exertional levels with the following nonexertional limitations: "no work at unprotected heights or around dangerous moving machinery, occasional contact with the public, simple one to three step procedures, routine and repetitive, without frequent changes in duties and is able to understand, remember and carry out simple instructions."  (R. at 16.)

Plaintiff argues that the ALJ's failure to assign weight to the SAMCs opinions was not harmless because the ALJ failed to address Section I of Dr. Lerner's MRFC, which stated that Plaintiff had six moderate limitations related to mental work-related abilities.  (Doc. 18 at 6.)

"[N]othing in the commissioner's regulations or rulings that [sic] requires an ALJ to make findings concerning each of the limitations listed [in Section I] on the 'Summary Conclusions' portion of the [MRFC] forms utilized by the SAMCs in assessing a claimant's mental residual functional capacity." *Huber v. Astrue*, No. 4:07-CV-477-A, 2008 WL 4694753, at *7 (N.D. Tex. Oct.22, 2008). In fact, "Section I of the MRFC, which contains the limitations that [Plaintiff] claims should not have been left out of the RFC determination, is merely a worksheet to aid [the medical consultant] in deciding the presence and degree of functional limitations and the adequacy of documentation and does not constitute the RFC assessment. . . . Instead, it is Section III that contains the actual mental RFC assessment." *Skiles v. Colvin*, No. 4:12-CV-418-Y, 2013 WL 3486921, at *8 (N.D. Tex. Jul.11, 2013) (citing to the Commissioner's Programs Operations Manual System §§ DI 24510.060B.2, DI 24510.060B.4). The ALJ's failure to specifically address Section I of the MRFC, therefore, did not affect his RFC finding. *See McDaniel v. Colvin*, No. 4:13-CV-989-O, 2015 WL 1169919, at *11 (N.D. Tex. Mar. 13, 2015) ("[I]t was not error for the ALJ to fail to include or discuss the items from Section I of the [MRFC] in assessing [the claimant's] mental RFC as they did not contain the actual opinion of [the] SAMC [] to [the claimant's] RFC.").

Plaintiff also contends that the ALJ's error was not harmless, because he found that Plaintiff had mild restrictions in activities of daily living even though Dr. Lerner found that she had moderate restrictions. (Doc. 18 at 6.) The ALJ concluded that Plaintiff had mild restrictions in activities of daily living at step three of the sequential evaluation process while considering the "paragraph B" criteria. (R. at 15.) The paragraph B criteria are used only to rate the severity of a plaintiff's mental impairments, however. *See Dean v. Colvin*, No. 4:13-CV-089-A, 2014 WL 1724765, at *12 (N.D. Tex. Apr. 30, 2014). "While the regulations require the ALJ to evaluate the limitations imposed by

Plaintiff's mental impairments in certain areas and direct the ALJ to proceed to the RFC determination if Plaintiff's impairments are found severe, the regulations do not specifically require the ALJ to find that the limitations found in evaluating the mental impairment must be word-for-word incorporated into either the RFC determination or the hypothetical question posed to the VE." *Patterson v. Astrue*, No. 1:08–CV–109–C, 2009 WL 3110205, at *5 (N.D.Tex. Sept. 29, 2009).

Further, the ALJ's RFC determination limiting Plaintiff to simple one to three step procedures without frequent changes, and to understand, remember, and carry out simple instructions does not contradict Dr. Lerner's opinion that Plaintiff had moderate limitation on activities of daily living. *See Johnson v. Comm'r of Soc. Security Admin.*, No. 3:11-CV-3126-L (BF), 2013 WL 632104, at *19 (N.D. Tex. Feb. 4, 2013) (finding that the ALJ did not err when he incorporated Plaintiff's moderate limitation on her daily living activities by restricting Plaintiff to "simple, repetitive tasks."), *rec. adopted* 2012 WL 6553829 (N.D. Tex. Dec. 13, 2012); *see also* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, §12.00(C)(1) (stating that a claimant's ability to conduct the activities of daily living help determine "the extent to which [the claimant is] capable of initiating and participating in activities independent of supervision or direction.").

Plaintiff further alleges that the ALJ's failure to weigh the SAMCs' opinions was not harmless because the ALJ failed to consider Dr. Holm's opinion that Plaintiff could not mange her own funds. (Doc. 18 at 6.)  In the same report, Dr. Holm concluded that Plaintiff's prognosis was fair.  (R. at 259.)  His observation about Plaintiff's math skills is consistent with the ALJ's RFC determination that she could perform one to three step procedures and understand, remember, and carry out simple instructions.  The VE who provided a list of jobs Plaintiff could perform based on

the ALJ's RFC identified at least two jobs that required low math level skills.  *See*  DOT §§ 209.687-026, 1991 WL 671813 (noting that a mail clerk required math level 1, and numerical aptitude level 4[6]), 323.687-014, 1991 WL 67278 (noting that a cleaner required math level 1, and numerical aptitude level 4).  The ALJ's RFC determination, therefore, did not contradict with Dr. Holm's conclusion that Plaintiff could not manage her benefit for her own interest.

In conclusion, two of the examining psychiatrists as well as two SAMCs agreed that Plaintiff had moderate impairments.  (R. at 258-59, 271, 389-90)  Both examining psychiatrists observed that Plaintiff was cooperative, alert, and her judgment was fair.  (R. at 258-59, 389-90.)  The ALJ properly discussed the evidence in the record in making the RFC determination, and he exercised his responsibility as the fact-finder in weighing the evidence and in choosing to incorporate limitations into the RFC assessment that were most supported by the record.  *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir.1991).  Because Plaintiff's treatment records and the SAMCs' opinions support the ALJ's decision, Plaintiff's substantial rights have not been affected.  *See Webb*, 2010 WL 1644898 at *11; *see also Hammond v. Barnhart*, 124 F. App'x 847, 851 (5th Cir. 2005) (concluding that the ALJ's failure to articulate the weight given to two state agency medical consultants was harmless error because substantial evidence supported the ALJ's decision).  Because the ALJ's failure to assign weight to Drs. Holm and Lerner's opinions would not have changed the outcome of the disability determination, remand is not required.  *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir.1988) (per curiam) ("[E]ven if such an impropriety exists, it does not render the ALJ's determination unsupported by substantial evidence, and thus does  not prejudice [the claimant's]

---

[6]  Numerical aptitude level 4 means lowest 1/3 of the population, excluding the bottom 10%.  *See* DOT §§ 209.687-026, 1991 WL 671813; 323.687-014, 1991 WL 672783.

substantive rights.").

**D.      Credibility**

Plaintiff contends that the ALJ's credibility assessment is flawed.  (Doc. 18 at 8-10.)

SSR 96–7p requires the ALJ to follow a two-step process for evaluating a claimant's subjective complaints.  SSR 96–7p, 1996 WL 374186, at *2 (S.S.A. July 2, 1996).  First, the ALJ must consider whether the claimant has a medically determinable impairment that could reasonably be expected to produce the alleged symptoms.  *Id.*  Once such an impairment is shown, the ALJ must evaluate the intensity, persistence, and limiting effects of the alleged symptoms to determine the extent to which they limit the individual's ability to do basic work activities.  *Id.*  If the claimant's statements concerning the intensity, persistence, or limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a credibility finding regarding the claimant's statements.  *Id.*; *Falco*, 27 F.3d at 164 (citing *Scharlow v. Schweiker*, 655 F.2d 645, 648–49 (5th Cir.1985)).

The ALJ's credibility determination must be based on a consideration of the entire record, including medical signs and laboratory findings, and statements by the claimant and her treating or examining sources concerning the alleged symptoms and their effect.  SSR 96–7p, 1996 WL 374186, at *2.  The ALJ must also consider a non-exclusive list of seven relevant factors in assessing the credibility of a claimant's statements: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate symptoms; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5) treatment, other than medication, for relief of pain or other symptoms; (6) measures other than treatment the claimant uses to relieve pain or other

symptoms (e.g., lying flat on his or her back); and (7) any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms." *Id.* at *3.  Although the ALJ must give specific reasons for his credibility determination, "neither the regulation nor interpretive case law requires that an ALJ name, enumerate, and discuss each factor in outline or other rigid, mechanical form.  It suffices when the administrative decision is sufficiently specific to make clear that the regulatory factors were considered." *Prince v. Barnhart*, 418 F.Supp.2d 863, 871 (E.D. Tex. 2005).  Moreover, the Fifth Circuit has explicitly rejected the requirement that an ALJ "follow formalistic rules" when assessing a claimant's subjective complaints.  *Falco*, 27 F.3d at 164.  The ALJ's evaluation of the credibility of subjective complaints is entitled to judicial deference.  *See Carrier v. Sullivan*, 944 F.2d 243, 247 (5th Cir.1991).  The ALJ is in the best position to assess a claimant's credibility since he "enjoys the benefit of perceiving first-hand the claimant at the hearing." *Falco v. Shalala*, 27 F.3d 164 n. 18 (5th Cir.1994).

Here, the ALJ acknowledged a link between Plaintiff's alleged symptoms and her medically determinable impairments, but he concluded from the entire record that Plaintiff was not entirely credible.  Although not in a formalistic fashion, the ALJ addressed several of the credibility factors listed in SSR 96-7p.  (R. at 17-18.)  He discussed Plaintiff's testimony that she attends church every Wednesday and Sunday, which goes to the daily activities factor.  (R. at 17.)  The ALJ discussed the medical evidence related to Plaintiff's allegations of depression, including Drs. Holm and Lerner's opinions, which go to the duration, frequency, and intensity factors.  (*Id.*)  He also considered the factors that precipitate and aggravate Plaintiff's symptoms when he noted that she broke her wrist in 2011.  (*Id.*)  The ALJ noted that in terms of Plaintiff's allegations of pain, she took over-the-counter medications.  (*Id.*)  He stated that he carefully considered the entire record and

concluded that Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were not credible to the extent they conflicted with the RFC assessment. (*Id.*)

Plaintiff argues that the ALJ erred by referring to the fact that she only took over-the-counter pain medications because she was unable to seek treatment for her back pain. (Doc. 18 at 9.)[7] Pain reaches the level of a disabling condition when it is "constant, unremitting, and wholly unresponsive to therapeutic treatment." *Falco*, 27 F.3d at 163. Courts have considered the use over-the-counter pain medication to support an adverse credibility finding concerning allegations of pain. *See Parfait v. Bowen*, 803 F.2d 820, 813-14 (5th Cir. 1986) (determining that a claimant who receives conservative pain treatment substantially supports an ALJ's adverse credibility finding regarding debilitating and severe pain); *see also Villa*, 895 F.2d at 1024 (stating that the ALJ was not precluded from relying on the lack of prescribed treatment as an indication of nondisability); *Hollis v. Bowen*, 837 F.2d 1378, 1384 (5th Cir. 1988) (recognizing "that an absence of objective factors indicating the existence of severe pain-such as limitations in the range of motion, muscular atrophy, weight loss, or impairment of general nutrition-can itself justify the ALJ's conclusion."). Plaintiff has not shown that the ALJ erred by relying on the fact that she took over-the-counter pain medication in making an adverse credibility determination.

Plaintiff also argues that the ALJ erred when he referenced Plaintiff's six prior applications given that Social Security hearings are *de novo* proceedings. (Doc. 18 at 9-10.) As already noted, however, the ALJ relied on Plaintiff's testimony and other medical evidence to make his credibility determination.

_____

[7] There are no medical records showing that Plaintiff attempted to seek treatment for her back pain at the same time that she sought treatment for various physical symptoms (including pain) in 2009, while she was unemployed. (R. at 283-333.)

The ALJ's discussion shows that he relied primarily on the medical evidence of record to find Plaintiff not credible.  Although not in a formalistic fashion, he also considered the factors for determining credibility and adequately explained his reasons for rejecting Plaintiff's subjective complaints, and there was substantial evidence to support his determination.  *See Falco*, 27 F.3d at 164.  Remand is not required on this issue.

**E.** **Explanation**

Plaintiff contends that the ALJ owes her a "duty of explanation" and is required to give "rational and logical reasons" for his decision.  (Doc. 18 at 7.)  She "assumes that it is not necessary to demonstrate the numerous places in SSA which reflect this general rule, from the weighing of medical opinions, to the judging of credibility, to the formulation of accurate RFC findings."  (*Id.*)

Plaintiff cites four cases as examples of courts in this district that have acknowledged this "general rule."  *See Gittens v. Astrue*, No. 3:04-CV-2363-L, 2008 WL 631215, *5 (N.D. Tex. Feb. 29. 2008) (discussing the ALJ's duty to address the factors listed in 20 C.F.R. § 404.1527(d)(2) when he rejected the claimant's treating physician's opinion); *Medrano v. Astrue*, No. A-09-CA-584-SS, 2010 WL 2522202, *5-6 (W.D. Tex. June 17, 2010) (discussing the ALJ's duty to address the issues required by SSR 02-1p regarding obesity in making an RFC assessment); *Amilpas v. Astrue*, No. SA-09-CV-389-XR, 2010 WL 2756552, *4 (W.D. Tex. July 12, 2010) (discussing the ALJ's duty to explain the weight he gave to a medical expert's opinion); *Nichols v. Astrue*, No. 3:10-CV-00420-CWR-LRA, 2012 WL 1802462, *3 (S.D. Miss. May 17, 2012) (discussing the ALJ's duty to explain his credibility finding).  None of these cases hold that the ALJ

25

had a *general* duty to provide "rational and logical reasons for the decision."[8]

Nor do these cases provide a basis for finding that the ALJ erred on any of the bases raised therein. In *Gittens*, the ALJ rejected the claimant's treating physician's opinion but failed to discuss the factors listed in 20 C.F.R. § 404.1527(d)(2). 2008 WL 631215, at *5. Here, the ALJ did not reject Plaintiff's treating physician's opinion, so he was not required to consider the factors listed in 20 C.F.R. § 404.1527(d)(2). In *Medrano*, the court found that although the ALJ did not explicitly explain how he reached his conclusion on whether the claimant's obesity caused any physical limitations, his decision showed that he recognized that it contributed to his physical limitations and properly incorporated those limitations into his RFC determination. 2010 WL 2522202 at *6. Here, Plaintiff makes no allegations concerning the effect of obesity on her physical limitations. In *Amilpas,* the court found that the ALJ was not required to state the medical expert's opinion explicitly or offer a factor-by-factor explanation of weight given to every medical record. 2010 WL 2756552, at *5. The ALJ in this case also referred to all relevant medical evidence and incorporated it to his decision; he was not required to offer a factor-by-factor explanation. Lastly, as in *Nichols*, the ALJ provided sufficient explanation of the adverse credibility finding in this case, as discussed above.

In conclusion, Plaintiff has failed to show that the ALJ erred by not providing more explanation generally, or with regard to the specific issues raised in the cases she cites. Remand is not required on this issue.

---

[8] Plaintiff also cites to SSR 96-8p. (*See* doc. 18 at 7 n. 41.) That ruling relates to the RFC assessment and the ALJ's responsibility to assess whether a claimant is able to perform work-related abilities on a function-by-function basis. *See* SSR 96-8p, 1996 WL 374184 (S.S.A. 1996). Plaintiff does not argue that the ALJ failed to make a function-by-function assessment. (*See* doc. 18 at 7-8.)

### III.  CONCLUSION

The Commissioner's decision is **AFFIRMED**.

**SO ORDERED** on this 31st day of March, 2015.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE